IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Cause No. 4:24-CR-00116-HEA ) ) |
| MERCY OJEDEJI, | ) ) |
| Defendant. | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Mercy Ojedeji's intentions when coming to America were to find a better life for himself. Here, there are more opportunities, and he could be closer to his father. He wanted to be in America so desperately that he did not follow the proper legal channels to get here. He paid an individual to falsify paperwork and to get him into University of Missouri – Columbia. And for that, he will be punished not just by time in custody, but by being deported back to Nigeria.

But when Mercy made it to Missouri, he realized he was in over his head – not just in school, but in every aspect of his daily life. The cultural differences between Nigeria and America were stark. He had difficulty fitting in and meeting people. His accent was very heavy, and he struggled to even understand what was going on in class and communicate that lack of understanding to his peers or professors.

Around October 2023, a month or so into school, Mercy was scrolling on Instagram. He found a St. Louis area Nigerian restaurant's post. He commented on the post, asking if the food was good. A woman responded and offered to take him there some time. Mercy checked out her profile. Her name was Shirley Waller. She posted about family and traveling to African countries, including a recent trip to Nigeria. He felt like they would have a connection and things in common.

1

So, Mercy decided to message the woman back and take her up on the offer. He was lonely, missing his culture and the food from home. They scheduled a date to check out the restaurant. Mercy thought their first date went well. They continued to see each other, and their relationship moved quickly. Waller took care of Mercy. She gave him money, helped him navigate the cultural differences he was struggling with. She always touted her big-paying job

However, over time, the image Mercy had of Shirley began to change. Mercy found out a lot of the things she had told him were not true. First it was her age. She led him to believe she was younger, closer to his age, in her 20s. Then Mercy found out Shriley was actually 40 years old – 16 years older than him. The next lie to come out was that Shirley was actually already married to someone else – a man in Nigeria. Waller was turning out to be someone completely different than Mercy had believed her to be.

By this time, Mercy was living with Waller, and several of her children and cousins. Waller was pregnant with his child. He was in too deep in a country he still did not understand. Mercy had fallen prey to just another iteration of Waller's romance scheme.

Mercy did not know about the inner workings of Waller's work or where she got her money. He was naive and trusted her. He takes complete responsibility for the actions he took part in and had knowledge of – the falsified documents and defrauding the University of Missouri. Mercy asks this Court to consider all the surrounding circumstances of this case and to only punish him for what he took part in.

### 18 U.S.C. § 3553(a) Sentencing Goals

18 U.S.C §3553(a)(2) considers the need for the sentence imposed to:

(A)   reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense;

  (B)  afford adequate deterrence to criminal conduct and

  (C)  protect the public from further crimes of the defendant, and

  (D)  provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

A sentence of time served (nearly six months) would meet all these goals. Mercy came to the United States, trying to start a better life for himself. His plea to these offenses will trigger his deportation. Once his time is up at the BOP, he will be moved to another facility to await deportation proceedings. At that point, his home and life here will be over. His ability to see his son will be extremely limited. His first and only child will now grow up an entire continent away from him. That is the ultimate punishment.

Courts have recognized the severity of this collateral consequence to a conviction. *See Padilla v. Kentucky,* 130 S.Ct. 1473 (2010) (deportation as the result of a conviction is "a particularly severe penalty" and is the "equivalent to "banishment or exile…[D]eportation is an integral part – indeed, sometimes the most important part – of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes."); *United States v. Thavaraja*, 740 F.3d 253, 262-63 (2d Cir. 2014) ("In determining what sentence is 'sufficient, but not greater than necessary,' to serve the needs of justice, a district court may take into account the uncertainties presented by the prospect of removal proceedings and the impact deportation will have on the defendant and his family."); *United States v. Pacheco-Soto*, 386 F.Supp.2d 1198, 1205 (D.N.M.2005) (in drug case, below guideline sentence imposed because defendant is deportable alien who "faces a unwarranted increase in the severity of his sentence. He likely will not be eligible for any early release, he will not be able to serve his sentence in a minimum-security prison, and he will not qualify for reduced credits for participation in a residential drug or alcohol

3

abuse program. These consequences are severe and unfair."). Mercy asks this Court to consider these realities and his inability to earn his way out through programming and credits as other offenders can and grant him a downward variance in part based on this punishment.

Additionally, Mercy has never served any sort of sentence before, let alone a custodial sentence. The impact of this time will affect him greater than those who have criminal history and experience in jail or prison. The requested sentence is sufficient but not greater than necessary to meet the sentencing goals under 3553(a).

Deterrence would also be sufficiently addressed by this sentence because now, if Mercy would ever even try to enter the United States again, he would be charged with a new crime. The public would also be protected because Mercy would no longer be in this country.

Mercy is only 26 years old. Sentencing him to further time in the Federal Bureau of Prisons will threaten his chances at rehabilitating himself and returning Nigeria with a chance at success. See *United States v. Lurye*, No. 1:14-CR-37-TLS, 2016 WL 1567249 (N.D. Ind. Apr. 19, 2016). A lengthier sentence would not be any more effective and would not help him in becoming a productive member of society once he is released.

*Actions on Pretrial Release*

After being released pretrial, Mercy was able to return to Chicago where his father resides and followed all conditions of pretrial release. Although he was taken into custody at his change of plea hearing, he showed over those nearly twelve months that he follows rules and restrictions placed on him. His performance while under supervision shows he is taking this case and his future seriously, lessening the need for additional punishment through incarceration.

Performance on pre-trial release has been considered by courts at sentencing. *See United States v. Munoz-Nava*, 524 F.3d 1137 (10th Cir. 2008) (below guidelines sentence affirmed in part

4

due to defendant's behavior while on a year-and-a-half pretrial release, which the district court found to be commendable, showing defendant is unlikely to reoffend); *United States v. Baker,* 502 F.3d 465 (6th Cir. 2007) (below guideline sentence of probation with one year house arrest proper in part because he behaved "exceedingly well" while under supervision of pretrial services).

*Conclusion*

Mercy accepts responsibility for the actions he knew about and those he took part in. His background and upbringing put in perspective how this man is before the Court.  Mercy is motivated and committed to getting on the right track. Based on the offense conduct and his personal characteristics, a sentence of time served and an order to pay the restitution owed to University of Missouri would be sufficient but not greater than necessary to achieve the goals of 18 U.S.C. § 3553(a): punishment, protection of society, deterrence, and rehabilitation.

WHEREFORE, for the foregoing reasons, Mercy Ojedeji respectfully requests the Court sentence him to time served and grant any other relief the Court deems just or proper.

Respectfully submitted,

JOHN C. SCHLEIFFARTH, P.C.

By: */s/ John C. Schleiffarth_____*
JOHN C. SCHLEIFFARTH (#63222MO)
Attorney for Defendant
John C. Schleiffarth, P.C.
120 S Central Ave, Ste 1550
St. Louis, Missouri 63105
(314) 561-9690 Phone
(314) 596-0658 Fax
Email: john@jcsattorney.com

## CERTIFICATE OF SERVICE

The below signature certifies a true and accurate copy of the foregoing was filed via the Court's electronic filing system, this September 26, 2025, to all counsel of record.


Tracy Berry
Assistant U.S. Attorney
111 S 10th St, 20th Floor
St. Louis, MO 63102

                                                   _/s/ John C. Schleiffarth_